LOCAL UNION No. 1522, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS ET AL.

COURT OF COMMON PLEAS HARTFORD COUNTY FILE No. 108994

Memorandum filed October 23, 1973

*John A. Arcudi,* of Bridgeport, for the plaintiff.

*Zeman & Daly,* of Hartford, for the defendant New London Police Union, Local 724.

16

*Robert K. Killian,* attorney general, and *Alphonse C. Jachimczyk,* assistant attorney general, for the named defendant.

ALEXANDER, J. The plaintiff, hereinafter referred to as the firefighters' union, appeals from an order of the defendant board. Also joined as a defendant is the New London Police Union, Local 724, hereinafter referred to as the policemen's union. The appeal involves the so-called parity clause contained in a labor contract between the city of New London and the firefighters' union. The plaintiff invokes the provisions of the Uniform Administrative Procedure Act. General Statutes §§ 4-166—4-188. Under it, this court shall conduct its review on the record before the board. The court may not substitute its judgment for that of the board and may reverse or modify the ruling of the board only for the reasons set forth in subsection (g) of § 4-183. Reversal is permitted if the board's decision is in violation of statutory provisions.

The facts found by the board indicate that the firefighters' union entered into a collective bargaining agreement with the city of New London on February 9, 1972. The agreement with the policemen's union was not then in existence but was executed later, on July 10, 1972. The firefighters' contract contained the following parity clause in article 8 thereof: "Note 3. Any increase in wages which is granted to an employee of the Police Department, which is greater than that received by any employee of this Bargaining Unit who has the same relative length of service in a comparable rank to that held by such Police Department employee, shall be simultaneously granted and effective for such Bargaining Unit employee, and shall be in addition to the provisions of this agreement. For purposes of this Note, the following shall be considered ranks: Fire

Fighter with Patrolman; Fire Lieutenant with Police Sergeant; Fire Captain with Police Lieutenant; and Deputy Chief with Police Captain. For purposes of this Note, the term 'increase in wages' shall mean and include any increase in salary and any additional payment for services currently being performed, and any provision for and/or any increase in night shift premium or differential pay, and/or any provision for and/or any increase in longevity pay, and/or any provision for and/or any increase in holiday pay or holiday benefits."

When the firefighters' union negotiated its contract, it sought to obtain premium pay for holidays. It failed in this regard. A similar demand was made by the policemen's union and was likewise unsuccessful. At one point in the contract discussions the city negotiator, in discussing holiday pay, told the policemen's union: "We can't give it to you because if we did we'd have to give it to the firemen."

In its "Conclusions of Law," the board stated that although there was no "satisfactory proof that the existence of the parity clauses in the firefighters' contract affected any specific item in the Police contract . . . , the mere presence and necessary operation of such clause inevitably interferes with, restrains and coerces the Police Union in future negotiations with the City and the agreement upon such a clause constitutes a violation of [General Statutes] § 7-470 (a) (1) by the City . . . and § 7-470 (b) (1) [A] . . . by the Firefighters' Union. The use of such clause by the City Negotiator as a lever constituted a violation of 7-470 (a) (1)."

As findings favorable to the firefighters' union, the board concedes that "even in the absence of a parity clause there is a widespread but not uniform tradition among American cities of observing parity in fact between policemen and firemen . . . and it is

common practice [in such instances for the City Negotiator] to stress the implications which any concession would have in terms of similar demands by other groups."

General Statutes § 7-468 of the Municipal Employee Relations Act provides that municipal employees shall have the right to bargain collectively and to be "free from actual interference, restraint or coercion." Municipalities are, by § 7-470 (a) (1), prohibited from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468." Employee unions are similarly prohibited. § 7-470 (b) (1). It is to be determined whether the parity clause in question violates these statutes in the sense that the police union was restrained or suffered "actual interference" when it was confronted with the parity clause in the firefighters' contract. It is evident that if the police are to obtain wage concessions superior to those of the firemen, the police, because of the parity clause in the firefighters' contract, face two distinct obstacles: (1) The city's resistance to the policemen's demands would be considerably increased because, by the terms of the parity clause in the firemen's contract, the city would be contractually bound also to increase the firemen's wages. (2) The inevitable tendency of the clause in question is to place a ceiling or upper limit above which the policemen may not go without being confronted with the parity clause. As the board properly points out, the police are thus placed in the position of being obliged to negotiate not only on their own behalf but on behalf of the firemen as well.

Further, with regard to the question of "restraint" and "interference," there is the fact that this parity agreement is between one group—firemen—and the city which will impose equality for the future upon

another group—policemen—which has had no part in making the agreement. It is in this aspect of the case that the board levels its most telling and damaging charge against the parity clause. It reasons that, before the police union sits down to commence its bargaining with the city, it is already legally bound and tied in with the firemen. On this issue, the police union's right to bargain has been completely taken from it. As the board states: "We find that the inevitable tendency of such an agreement is to interfere with, restrain and coerce the right . . . to have untrammeled bargaining. And this affects all the later negotiations . . . even though it may be hard or impossible to trace by proof the effect of the parity clause upon any specific terms of the later contract. . . . The parity clause will seldom surface in later negotiations, but it will surely be present in the minds of the negotiators and have a restraining or coercive effect not always consciously realized." The board goes on to observe that the "economic terms offered to policemen and accepted by them were just the same as those previously given to the firemen."

Accordingly, it was concluded that General Statutes § 7-470 (a) (1) has been violated by the city and that § 7-470 (b) (1) (A) has been violated by the firefighters' union. Both the city and the firefighters' union have, by contractually binding themselves by the parity clause, engaged in "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed in § 7-468." See § 7-470 (a) (1).

The brief of the firefighters' union cites a number of cases. As a general observation, it may be said that these cases are not in point; they are not concerned with General Statutes §§ 7-470 (a) (1) and 7-470 (b) (1) (A) or with similar statutes in other

jurisdictions. The statutes in question in this case involve "[i]nterfering, restraining or coercing employees" in the exercise of their right to bargain. They do not involve subsections (a) (4) or (b) (2) of § 7-470, which apply to the question of bargaining in good faith. The issue of good faith is not material in determining a violation of subsection (a) (1) of § 7-470. *National Labor Relations Board* v. *Insurance Agents' International Union,* 361 U.S. 477, and *General Electric Co.* v. *National Labor Relations Board,* 412 F.2d 512, are inapplicable.

For each of the Connecticut statutes involved, there is a corresponding federal statute under the National Labor Relations Act—viz., §§ 7 and 8 of the act. '49 Stat. 452, as amended, 29 U.S.C. §§ 157, 158 (a) (1), (b) (1) (1970). For this reason the judicial interpretation accorded the federal act is persuasive in the interpretation of our own act. *Windsor* v. *Windsor Police Dept. Employees Assn., Inc.,* 154 Conn. 530, 536.

The firefighters' brief asserts that the board found no actual interference with the police-city negotiations so as to affect any specific provision of the contract. In a case where improper company interference proved to be unsuccessful, the court stated: "The Respondents contend that the evidence fails to show that any employee was in fact intimidated or coerced by the statements of the Respondents, and for that reason it is a case of 'damnum absque injuria,' making it a moot question unsuitable to be dealt with by any order of the Board. Such direct evidence, however, is unnecessary. As stated by the Board it is impossible to estimate the effect of such anti-union activities on employees generally and the reasonable inference is that anti-union conduct of an employer does have an adverse effect on self-organization and collective bargaining. The

test is whether the employer engaged in conduct which, it may reasonably be said, *tends* to interfere with the free exercise of employee rights under the Act. [Italics supplied.]" *National Labor Relations Board* v. *Ford,* 170 F.2d 735, 738; see also *National Labor Relations Board* v. *Standard Container Co.,* 428 F.2d 793, 794; *Cooper Thermometer Co.,* 154 N.L.R.B. 502.

Evidence as to past events was introduced before the board as an aid in construing the parity clause. This was correctly disregarded by the board because, as it stated in its opinion, it was concerned, not with the historical or philosophical aspects, but rather with a narrow question of statutory construction.

Other cases in the firefighters' brief are inapplicable. Some involve more than one common employer. Others apply to parity for members within the same employee bargaining unit. In none of these situations does the parity clause interfere with the collective bargaining process. Still others were addressed to principles of arbitration law rather than to labor statutes.

The firefighters' brief also stressed the similarities between police and firemen. This is arguable. For example, General Statutes § 7-471 (3) ensures the separability of the police and fire unions as bargaining units. It sets forth the board's powers in selecting appropriate units for collective bargaining purposes, and in doing so states that employees of the fire department and employees of the police department shall each be separate units. It is the claim of the police union that the parity clause, by forcing the police union to bargain not only for itself but also for the firemen, violates this statute, in that the principle of separability specifically guaranteed therein is violated. In a sense this may be a tenable

claim. For reasons previously stated, however, it is not necessary to decide this claim by the policemen's union.

Acting under the powers conferred on it by General Statutes § 7-471 (4) (B), the board has entered an order that the city of New London and the firefighters' union refrain from enforcing or seeking to enforce the parity clause in question and that they delete it from the contract between them.

As stated, this court may reverse the ruling of the board only in the situations specified in General Statutes § 4-183 (g). At the hearing before this court, counsel agreed that the only issue to be presented is whether the parity clause violates the statutes involved. For the reasons previously stated, it is felt that the board's conclusions as to the interpretation relative to the law were correct.

Accordingly, the appeal is dismissed and the order and ruling of the defendant board is affirmed.